FILED
JUL 26 2011
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

WALTER OZELL COOPER, SR.,

Petitioner,

vs.

KATHLEEN DICKERSON, Warden,

Respondent.

No. C 09-2526 JSW (PR)

**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND CERTIFICATE OF APPEALABILITY**

## INTRODUCTION

This is a habeas corpus case filed pro se by a state prisoner pursuant to 28 U.S.C. § 2254. The Court ordered respondent to show cause why the writ should not be granted. Respondent filed an answer and a memorandum of points and authorities in support, and has lodged exhibits with the court. Petitioner responded with a traverse. For the reasons set out below, the petition is DENIED.

## PROCEDURAL BACKGROUND

On March 16, 2006, a jury convicted Petitioner of thirteen counts of aggravated sexual assault of a child under the age of 14 (counts one through 13) and four counts of unlawful sexual intercourse with a minor (counts 14-17). (Ex. E at 3.)[1] Petitioner was sentenced to consecutive terms of 15 years to life in state prison on counts one and two, concurrent terms of 15 years to life on each of counts three through 13, and an additional

[1]Citations to "Ex." are to the record lodged with the Court by the Attorney General, except where otherwise noted.

term of two years on count 14 to run concurrently with three two-year terms on counts 15-17. The California Court of Appeal affirmed the trial court's decision, and the California Supreme Court denied his petition for review. On June 5, 2009, Petitioner filed the instant petition for writ of habeas corpus.

## FACTUAL BACKGROUND

Petitioner's daughter, J. (hereinafter "J.") was born in 1993. J. testified that at the time of the crimes she lived in Oakland, California, with her father. In 2003, she spent almost a year living with her grandmother in New Orleans, following an episode of physical abuse by Petitioner that led to Petitioner's arrest for child abuse. Petitioner had hit her in the face and pushed her against a wall, and J. told police that Petitioner hit her with a belt on a prior occasion.

Just before Christmas, 2003, J. returned from New Orleans to Oakland to live with Petitioner. J testified that soon after her arrival, Petitioner came into her bedroom in the middle of the night and asked her if she wanted to have "sex fun," to which she replied, "I don't care." J. testified that she did not want to say "no" because she feared that Petitioner would beat her again as he did before she moved to New Orleans. J. testified that Petitioner proceeded to have sexual intercourse with her, and when she yanked back in pain he told her to "just relax." Following the intercourse, J. testified that Petitioner ejaculated into a towel, and that she was bleeding and in pain. J. testified that she and Petitioner had "sex fun" on other occasions at Petitioner's home and at his girlfriend C.'s home, and that the abuse occurred frequently. When asked for specifics, J. told police that it happened more than ten times and estimated for a social worker that she and her father had sexual intercourse 20 times. J. testified that Petitioner told her not to tell anyone about what he had done because if she did he would go to jail and she would be placed in a foster home, which scared her. J. also testified that on two occasions she and Petitioner's girlfriend, C., had "sex fun."

In January of 2005, J. was taken to the hospital because she was having sharp pains in her stomach and shoulder and was unable to sleep. J. testified that Petitioner instructed her to say a boy from Alameda did it if she was questioned about her sexual activity. Doctors discovered that J. had contracted chlamydia and gonorrhea, and further diagnosed her with pelvic inflammatory disease. J. originally reported that she was not sexually active, but following a discussion with her cousin, where her cousin described J.'s diseases as "like AIDS," J. admitted that both Petitioner and his girlfriend had been having sex with her. J. spoke with a social worker, with police, and with an interview specialist at the Child Abuse Listening Interviewing Coordination ("CALICO") center.

After J. came forward, three other female family members and an ex-girlfriend's daughter described instances of sexual abuse by Petitioner when they were approximately J.'s age. The alleged abuse ranged from fondling to sexual intercourse. Petitioner admitted that he had sexual intercourse and conceived a child with his niece, Tomeka Cleveland, when she was a young girl. Petitioner testified that he did not have a sexual relationship with his daughter or any of the other alleged victims. Emergency room doctor Charlotte Wills testified that prior to J.'s hospital visit in January of 2005, Petitioner was treated for both gonorrhea and chlamydia, and Petitioner's girlfriend, C., testified that she also suffered from the same sexually transmitted diseases.

C. was a 16-year-old runaway at the time she began dating Petitioner, and was 17 years old when she testified at Petitioner's preliminary hearing.[2] Although C. told Petitioner that she was 18 years old when they met, Vivian Cleveland, Petitioner's niece, testified that she informed Petitioner that C. was no more than 16 years old, information she received from C.'s aunt. Vivian testified that Petitioner responded to the information by stating that he will be the "judge of that," and will determine her age on his own.

---

[2] At trial, the prosecutor read C.'s testimony from the preliminary hearing into evidence because she could not be located.

Petitioner admits, and C. testified that they subsequently began dating and engaging in sexual intercourse. This took place from September of 2004 through December of 2004. Petitioner's co-worker, Leon Ward, testified that during an argument between C. and Chrystal (J.'s cousin), Petitioner told C. via phone that if anyone tried to hit her they would go to jail because they were not minors. Petitioner testified that he first discovered that C. was not 18 years old when he spoke with C.'s mother in January of 2004 to request her consent for marriage. He denied having such knowledge earlier.

**STANDARD OF REVIEW**

A district court may not grant a petition challenging a state conviction or sentence on the basis of a claim that was reviewed on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). The first prong applies both to questions of law and to mixed questions of law and fact, *Williams (Terry) v. Taylor*, 529 U.S. 362, 407-09 (2000), while the second prong applies to decisions based on factual determinations, *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

A state court decision is "contrary to" Supreme Court authority, that is, falls under the first clause of § 2254(d)(1), only if "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams (Terry)*, 529 U.S. at 412-13. A state court decision is an "unreasonable application of" Supreme Court authority, falling under the second clause of § 2254(d)(1), if it correctly identifies the governing legal principle from the Supreme Court's decisions but "unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413.

The federal court on habeas review may not issue the writ "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411. Rather, the application must be "objectively unreasonable" to support granting the writ. *Id.* at 409.

When there is no reasoned opinion from the highest state court to consider the Petitioner's claims, the Court looks to the last reasoned state court opinion. *See Ylst v. Nunnemaker*, 501 U.S. 797, 801-06 (1991); *Shackleford v. Hubbard*, 234 F.3d 1072, 1079, n. 2 (9th Cir. 2000). Here, the last reasoned state court opinion came from the California Court of Appeal.

**DISCUSSION**

Petitioner's first two claims challenge the sufficiency of evidence supporting his convictions for aggravated sexual assault of a child under the age of 14 by rape. Petitioner's third claim challenges the sufficiency of the evidence supporting his convictions for unlawful sexual intercourse with a minor.

**I. Applicable Law**

The Due Process Clause "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). A state prisoner who alleges that the evidence in support of his state conviction cannot be fairly characterized as sufficient to have led a rational trier of fact to find guilt beyond a reasonable doubt therefore states a constitutional claim, which, if proven, entitles him to federal habeas relief. *Jackson v. Virginia*, 443 U.S. 307, 321, 324 (1979). *See, e.g., Wigglesworth v. Oregon*, 49 F.3d 578, 582 (9th Cir. 1995). The federal court "determines only whether, 'after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Id.* at 319. Only if no rational trier of fact could have found proof of guilt

beyond a reasonable doubt, has there been a due process violation. *Id.* at 324.

If confronted by a record that supports conflicting inferences, a federal habeas court "must presume – even if it does not affirmatively appear on the record – that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Id.* at 326. A jury's credibility determinations are therefore entitled to near-total deference. *Bruce v. Terhune*, 376 F.3d 950, 957 (9th Cir. 2004). Except in the most exceptional of circumstances, *Jackson* does not permit a federal habeas court to revisit credibility determinations. *Id.* (credibility contest between victim alleging sexual molestation and defendant vehemently denying allegations of wrongdoing not a basis for revisiting jury's obvious credibility determination).

After AEDPA, a federal habeas court applies the standards of *Jackson* with an additional layer of deference. *Juan H. v. Allen*, 408 F.3d 1262, 1274 (9th Cir. 2005). Generally, a federal habeas court must ask whether the operative state court decision reflected an unreasonable application of *Jackson* and *Winship* to the facts of the case. *Id.* at 1275 (quoting 28 U.S.C. 2254(d)). Section 2254(d)(1) plainly applies to *Jackson* cases; that is, if the state court affirms a conviction under *Jackson*, the federal court must decide whether the state court's application of *Jackson* was objectively unreasonable. *Sarausad v. Porter*, 479 F.3d 671, 677-78 (9th Cir. 2007). The federal court's task is not to decide whether the state court unreasonably determined disputed facts; it is, rather, to decide whether the state court unreasonably applied the *Jackson* test. *Id.* The *Jackson* standard must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law. *Id.*

//

//

//

//

## II. Aggravated Sexual Assault of a Child by Rape[3]

### A. Evidence of Fear or Duress

Petitioner contends that his convictions for aggravated sexual assault of a child by rape, in violation of California Penal Code sections 269 and 261(a), are supported by insufficient evidence that J. succumbed to his advances because of fear or duress. Aggravated sexual assault of a child, California Penal Code section 269, states that "(a) any person who commits any of the following acts upon a child who is under 14 years of age and seven or more years younger than the person is guilty of aggravated sexual assault of a child: (1) rape, in violation of paragraph (2) or (6) of subdivision (a) of Section 261." Cal. Penal Code §269. Under California Penal Code section 261(a), "rape is an act of sexual intercourse accomplished with a person not the spouse of the perpetrator, under any of the following circumstances . . . (2) where it is accomplished against a person's will by means of force, violence, duress, menace, or fear of immediate and unlawful bodily injury on the person or another." Cal. Penal Code §261(a). California Penal Code section 261(b) defines duress as follows:

> As used in this section, "duress" means a direct or implied threat of force, violence, danger, or retribution sufficient to coerce a reasonable person of ordinary susceptibilities to perform an act which otherwise would not have been performed, or acquiesce in an act to which one otherwise would not have submitted. The total circumstances, including the age of the victim, and his or her relationship to the defendant, are factors to consider in appraising the existence of duress.

Cal Penal Code §261(b) (external quotations omitted).

The evidence of fear and duress presented at trial included testimony that Petitioner had physically abused J. in the past. J. testified at trial that Petitioner physically abused her in the past and that because of Petitioner's history of abuse she was fearful.

---

[3]Petitioner's first claim challenges the sufficiency of evidence of fear or duress supporting the child sexual assault convictions, and is discussed in section A, below. Petitioner's second claim also challenges the sufficiency of the evidence of child sexual assault, but with respect to other issues, which are discussed in sections B, C, and D, below.

(Ex. H at 115, 117, 125-26.) J.'s cousin, Vivian Cleveland, corroborated J.'s testimony about the physical violence. (*Id.* at 637-642.) Cleveland testified that she witnessed Petitioner physically abuse his daughter in January of 2003, stating that "he slapped her in the face, and he continued to hit her, and he pushed her where her back hit the wall." (*Id.* at 639.) J. testified that although she did not want to have "sex fun" with her father, she was afraid to say "no" because she feared he would beat her again, (*id.* at 122,) and though it hurt she was afraid to tell him to stop, (*id.* at 126.) J. also testified that Petitioner threatened that if she revealed what he had done, he would go to jail and she would be sent to foster care, and responded "yes" when asked, "when your dad said that to you, did you feel scared?" (Ex. A at 42.)

Petitioner claims that J's and Cleveland's testimony that he abused J. is untrue, and denies that he did it, claiming that he only slapped her on the hand. The task of evaluating the testimony of witnesses and determining the truthfulness and weight of the evidence is reserved for the trier of fact. *Jackson*, 443 U.S. at 319. Petitioner's denial that the abuse took place does not mean that there was insufficient evidence for the jury to find that it did. A jury could reasonably choose to believe J. and Cleveland's statements about the physical abuse J. suffered, and to choose not to believe Petitioner's denials of the same.

Petitioner also argues that even if J.'s and Cleveland's testimony about the physical abuse were true, it was insufficient to constitute fear or duress. The fact that a year and a half before the first sexual assault took place Petitioner used physical discipline with his daughter that caused no injuries and required no medical attention, he claims, is not sufficient to constitute a basis for her fear. Petitioner additionally argues that J.'s testimony that she was scared when Petitioner told her if she told anyone about the intercourse he would go to jail and she would go to a foster home could not have produced the fear that caused her to succumb to his advances; this threat was not made

until after the sexual intercourse and thus was intended to prevent disclosure of the acts rather than to coerce their performance. (Ex. B at 16.)

The California Court of Appeal held that, as a matter of state law, there was sufficient evidence for a reasonable trier of fact to find that J. submitted to sexual intercourse out of fear or duress. The state court reasoned:

> [I]n this case, there is sufficient evidence to establish duress or fear. Defendant was J.'s father, and more than that the only parent she had really ever known – in defendant's own words "since 11 months old, I was her mama and her daddy." Defendant was a grown adult male and J. was a female child and only 10 years old when the abuse began. (*People v. Senior*, supra, 3 Cal.App.4th at p. 775 [evidence of an implied threat may include "the relationship between the defendant and the victim and their relative ages and sizes"]); *People v. Cardenas*, supra, 21 Cal.App.4th at p. 940 ["the position of dominance and authority of the defendant and his continuous exploitations of the victim" are relevant to duress].) As noted, defendant first had sexual intercourse with J. in December 2003 when J. was only 10 years old. Moreover, this happened within days of J.'s return from a yearlong separation from her father occasioned by the fact that he beat her about the face because she disobeyed him. J. testified she did not want to have "sex fun," with her father but was afraid to say "no" because she feared that he would beat her the way he did before she went to New Orleans. Even after J. told defendant that it hurt when he put his penis inside her and she "yanked back" with the pain, defendant told her to "just relax." This made J. scared; and she was afraid defendant would beat her if she told him to stop. Additionally, once defendant established a pattern of having 'sex fun' with his daughter, he told J. not to tell anyone because if she did he would go to jail and she would be put in a foster home. J. stated she was afraid that might happen. Indeed, defendant's very use of the term 'sex fun' can be viewed as a form of "psychological coercion" intended to pressure his vulnerable young daughter into doing something she had no wish to do. (*Cochran*, supra, 103 Cal.App.4th at p. 14.)
>
> Moreover, the power of defendant's psychological coercion over J. is evident in her response to defendant's instructions before she went back to the hospital the second time -- instructions prompted by defendant's concern that his sexual abuse of his daughter was about to be discovered. Before she went to the hospital a second time, defendant told J. that the doctors "might find out about us having sex and if they do say a boy from Alameda did it, and if they keep asking you more questions and stuff, say you don't want to say nothing else." And defendant had previously threatened J. with what would happen if his abuse was uncovered – he would go to jail and she would be put in a foster home. At the hospital, J. followed defendant's instructions to the letter, telling hospital staff that she had sex with a boy in her class but she could not remember his name or age. It was only after Crystal told J. that her infection was like AIDS and J. thought she might die that she admitted her father had sexual intercourse with her.

> In sum, the fact that J. was only 10 years old at the time of the first offense, coupled with defendant's position of dominance and authority as her father and only parent, his history of physical violence against J., and his threats that discovery of the abuse would result in him going to jail and J. going into foster care, together constitute substantial evidence on which a reasonable trier of fact could have concluded that J. submitted to sexual intercourse under fear or duress. (*Cochran*, supra, 103 Cal.App.4th at ¶. 13-14 [duress appraised under the totality of the circumstances, including age of the victim, her relationship to defendant, and "warnings to the victim that revealing the molestation would result in jeopardizing the family"].)

(Ex. E at 9-11.) (external quotations omitted).

A state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus. *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *Hicks v. Feiock*, 485 U.S. 624, 629 (1988) (even a determination of state law made by an intermediate appellate court must be followed by a federal habeas court). As explained by the California Court of Appeal, state law permits the evidence of the victim and defendant's relative ages and sizes, the inherent power imbalance in the relationship between Petitioner and his daughter, the "continued exploitations" of the victim, and the past physical abuse to support a finding of fear or duress. Petitioner's argument that the evidence was insufficient to constitute fear or duress within the meaning of California Penal Code Section 261(a) is premised on an interpretation of state law that is contrary to the holding of the California Court of Appeal. This court is bound by the state court's finding that the evidence of Petitioner's physical abuse and coercion was sufficient to constitute fear or duress under California law.

Accordingly, Petitioner's arguments that his due process were violated because of insufficient evidence of fear or duress fail.

B. <u>Evidence of Time</u>

Petitioner asserts that much of J.'s testimony with respect to when they had sexual intercourse was inconsistent and nonspecific, and thus insufficient to support his conviction. In denying Petitioner's claim, the California Court of Appeal held that, as a

matter of state law, evidence of when the assaults took place was sufficient for a reasonable trier of fact to convict Petitioner:

> Does the victim's failure to specify precise date, time, place or circumstance render generic testimony insufficient? Clearly not. . . [T]he victim must be able to describe the general time period in which these acts occurred (e.g., 'the summer before my fourth grade,' or 'during each Sunday morning after he came to live with us') to assure the acts were committed within the applicable limitation period." (*Jones*, supra, 51 Cal.3d at ¶. 315-316.). . . J. was able to describe the general time period in which the acts occurred. She testified that the first act of sexual intercourse took place around Christmas within days of returning from her grandmother's home in New Orleans. This starting point was given additional specificity and corroboration by the testimony of J.'s 33-year old cousin, who stated that J. returned from Louisiana on Christmas Eve of 2003. And defendant's abuse of his daughter clearly ended when J. went straight into foster care after being discharged from the hospital on January 20, 2005. In sum, we conclude the evidence here was sufficient to sustain each of the counts charged. (*Jones*, supra, 51 Cal.3d at p. 316 [where victim specified the type of conduct involved, its frequency, and confirmed that such conduct occurred during the limitation period, "Nothing more is required to establish the substantiality of the victim's testimony in child molestation cases."].)

(Ex. E at 11-13.) (external quotations omitted).

As explained by the Court of Appeal, California law only requires evidence of the general time period when the sexual assaults took place. J. testified that Petitioner began having sexual intercourse with her within a week of her return from her stay with her grandparents in New Orleans in December 2003, and stopped around the time she was treated at the hospital for gonorrhea and chlamydia in January of 2005. (Ex H. at 284.) J.'s testimony is clear on the general time period when the abuse occurred, citing a cognizable beginning and end. (*Id.* at 120, 129.) Therefore, Petitioner's claim of insufficient evidence of time fails.

C. <u>Evidence of Each Count of Sexual Assault</u>

Petitioner also argues that evidence on counts four through 12 was insufficient because there was no testimony specifically describing when and where each sexual assault occurred, other than the first (count 3) and last (count 13) sexual assaults. With respect to this claim, the California Court of Appeals held:

> [T]he victim must describe the number of acts committed with sufficient certainty to support each of the counts alleged in the information or indictment (e.g., 'twice a month' or 'every time we went camping'). . . J. described the number of acts committed with sufficient certainty to support each of the counts alleged. J. testified defendant had "sex fun" with her every week, adding, "It was, like, every day." Whether J. intended that comment literally or metaphorically, it constitutes evidence of sustained and continuous sexual abuse. On that basis, the People charged defendant with one count of rape for each month during which the abuse occurred. This does not reflect insufficiency of the evidence--rather, it reflects sensible charging by the prosecution. (See *Jones*, supra, 51 Cal.3d at p. 314 ["It must be remembered that even generic testimony . . . outlines a series of specific, albeit undifferentiated, incidents each of which amounts to a separate offense, and each of which could support a separate criminal sanction. (Of course, prosecutors should exercise discretion in limiting the number of separate counts charged. No valid purpose would be served by charging hundreds or thousands of separate counts of molestation, when even one count may result in a substantial punishment.)"].)

(Ex. E at 11-12.) (external quotations omitted)

J. recounted specific details of the first sexual assault, (Ex. H at 120-127), and estimated that she was similarly assaulted 20 times over thirteen months (*id.* at 993). J. also stated that the sexual assaults took place "sometimes in different rooms," naming "the room next door to me and in the living room and kitchen," and, "another place, like upstairs from his other girlfriend's house," and that they happened mostly at night." (Ex. A at 43-49; *see also* Ex. H at 127-129.) Although J. may not have provided details regarding each time Petitioner sexual assaulted her, J. specified the type of conduct involved, the number and frequency of the acts, the general time period, and the locations in which they occurred. As explained by the Court of Appeal, state law does not require more. Accordingly, the absence of specific evidence explaining the precise time, place, and circumstance of each sexual assault does not mean there was insufficient evidence to support the convictions.

D. <u>J.'s Inconsistent Testimony</u>

Petitioner points to a variety of inconsistencies in J.'s testimony on other topics in an attempt to show that she was not a credible witness in general and that the jury could

not reasonably believe her testimony. Petitioner contends that J.'s testimony describing their conversation just before they engaged in sexual intercourse for the first time was inconsistent. At the preliminary hearing, J. testified that Petitioner asked her if she wanted to have fun and she stated, "what kind of fun are you talking about, fun like playing, like playing, or fun like having sex," to which she testified he responded, "sex fun." (Ex. H at 188-189.) At trial, however, she stated that Petitioner asked her, "did I want to have play fun," she responded, "what do you mean," and he said, "sex fun." (*Id.* at 121.) Petitioner also points to inconsistencies in J.'s statements with respect to what she was wearing during the first incident (pajama pants versus a nightgown), the color of his semen, and whether he made any sounds during the intercourse. (Trav. at 13-16.) Additionally, Petitioner notes the fact that in her trial testimony J. states that she was bleeding after the first instance of sexual intercourse, but during the CALICO interview she stated that after she washed the towel looked like "nothing." (Pet. Ex. 2F at 23.) Petitioner also cites the change in J.'s account of who sexually assaulted her, first stating at the hospital that "a boy from Alameda did it," and later blaming her father. (Pet. at 1-3, 11.)

The California Court of Appeal denied petitioner's claim and reasoned:

> As many of the cases make clear, the particular details surrounding a child molestation charge are not elements of the offense and are unnecessary to sustain a conviction. (Citations.) The victim, of course, must describe the kind of act or acts committed with sufficient specificity, both to assure that unlawful conduct indeed has occurred and to differentiate between the various types of proscribed conduct (e.g. lewd conduct, intercourse, oral copulation or sodomy). . . J. described the kind of acts committed with sufficient specificity both to assure that unlawful conduct indeed has occurred and to identify that unlawful conduct as sexual intercourse. She described how defendant put his "thing," or penis, into her "cat," or vagina, did not put it all the way in, and moved it back and forth inside her.

(Ex. E at 11-12.) (external quotations omitted)

The majority of inconsistencies cited by Petitioner relate to minor and extraneous matters. As discussed in the above sections, J. described the initial act of sexual intercourse with Petitioner in detail. J. clearly identified for the CALICO center

interviewer, Amparo Ozuna, the relevant portions of the body involved. (Pet. Ex. 2E at 14.) Per J.'s description, the locations of the assaults remain constant, as does the type of sexual abuse. Furthermore, the validity of J.'s testimony is bolstered by the testimony of other family members as to Petitioner's alleged history of sexual abuse. The variations in J.'s description of her outfit, the color of the semen, and the details of certain conversations are relatively minor matters that do not call into question her overall credibility. J.'s consistent testimony on the essential elements of the crime allowed the jury to reasonably find her credible.

J's initially stating she had sex with "a boy from Alameda" before identifying Petitioner is an inconsistency concerning the important issue of who she had sex with, but J. adequately explained the inconsistency. The presence of contradictory or inconsistent statements by a witness does not preclude the jury from rationally resolving conflicts of evidence in favor of the prosecution. *United States v. Loya*, 807 F.2d 1483, 1489 (9th Cir. 1987). J. testified that she initially said identified an a boy from Alameda as the perpetrator at the direction of Petitioner. (Ex. H at 132.) In fact, J. testified that in exchange for her compliance, Petitioner told her he would give her three wishes. (*Id.*) Tomeka Cleveland corroborated J.'s account. (*Id.* at 288.) As J. explains the change in her statements as to who sexually assaulted her, the jury could reasonably find that it was not the boy from Alameda but Petitioner.

For the reasons described above, the state court reasonably rejected Petitioner's claims challenging the sufficiency of the evidence supporting his convictions for sexually assaulting J. Consequently, Petitioner is not entitled to federal habeas relief on these claims.

## III. Unlawful Sexual Intercourse With a Minor

Petitioner contends that there was insufficient evidence to support his convictions for unlawful sexual intercourse with a minor. These convictions were based on the

evidence of his sexual activity with his girlfriend, C., who was under the age of 18 at the time. Petitioner argues that the evidence cannot support his conviction because he did not know that she was a minor.

California Penal Code Section 261.5(a) describes the crime of unlawful sexual intercourse with a minor as "an act of sexual intercourse accomplished with a person who is not the spouse of the perpetrator, if the person is a minor. For the purposes of this section, a 'minor' is a person under the age of 18 and an 'adult' is a person who is at least 18 years of age." Cal. Penal Code §261.5(a). California state law permits a mistake of fact defense, whereby a defendant's reasonable and good-faith belief that a sexual partner is 18 years of age or older is a defense to the charge of unlawful sexual intercourse with a minor. *People v. Hernandez*, 61 Cal.2d 529, 536 (1964).

In rejecting Petitioner's claim, the Court of Appeal stated:

> Defendant contends that there is insufficient evidence to sustain the convictions in counts 14-17 for unlawful sexual intercourse with C. because he entertained a reasonable, good-faith belief that she was 18 years old. He asserts that he did not discover she was under 18 years of age until he called her parents in December 2004 to ask their permission to marry her. This contention is without merit.
>
> A defendant's reasonable and good-faith belief that a sexual partner is 18 years of age or older is a defense to the charge of unlawful sexual intercourse. (*People v. Hernandez* (1964) 61 Cal.2d 529, 536.) Defendant points to evidence in the record showing that C. told several persons that she was at least 18 years old, including defendant. However, in determining a claim of insufficiency of evidence in a criminal case we examine on "the entire record" to see if "a rational trier of fact could find the defendant guilty beyond a reasonable doubt. (Citations.)" (*Jones*, supra, 51 Cal.3d at p. 314.) And we must "view the evidence in the light most favorable to the People and must presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence. (Citation.)" (*Ibid.*)
>
> Viewing the record as a whole, there was testimony from J.'s cousin and her Aunt Vivian, who said they did not believe C. was 18 years old (Vivian said she "looked like a baby"). Also, Vivian testified that she heard directly from C.'s aunt that C. was only 16 years old. However, when Vivian told defendant that C. was "no more than 16," defendant stated that he "would be the judge of that" and would find out how old C. was by himself. Further, Leon Ward, appellant's co-worker, testified to a conversation he overheard between defendant and C. just before Halloween of 2004. Defendant had been called to intervene in a fight between C. and Crystal. After defendant collected C. from the household, Ward

> heard defendant tell C. that if Crystal or her sisters hit her, they could go to jail because C. was a minor. Defendant was asked about this conversation at trial, and he testified that what he told C. was to cause a commotion if any of the sisters jumped her because if the police came they would go to jail because they were not minors. However, especially in light of the mountain of evidence that defendant had molested other young girls in the past, a rational trier of fact was entitled reject defendant's testimony and any concomitant inference that he would have abstained from sexual intercourse with C. if he had only known she was under 18-years of age, and infer to the contrary that he did not hold a good faith belief that C. was 18-years old. In sum, "view[ing] the evidence in the light most favorable to the People and . . . presum[ing] in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence[,]" we conclude there is substantial evidence in the record to support a finding by a rational trier of fact that defendant did not harbor a reasonable, good-faith belief that C. was at least 18-years of age. (*Jones*, supra, 51 Cal.3d at p. 314.) Accordingly, the convictions on counts 14-17 for unlawful sexual intercourse must be affirmed.

(Ex. E at 13-14.) (external quotations omitted).

There was ample evidence that the jury could have relied upon to show that Petitioner did not have a reasonable or good-faith belief that C. was 18 or older when he engaged in sexual intercourse with her. According to trial testimony, J.'s Aunt Vivian told Petitioner that C. was 16 years old before he engaged in sexual intercourse with C. (Ex. H at 653.) Vivian testified that Petitioner's response to that information was that he would be "the judge of that." (*Id.*) In addition, Petitioner's co-worker testified that he heard Petitioner tell C. that if C. was hit by certain people she was arguing with, they would go to jail because they were not minors. A reasonable trier of fact could have inferred from Petitioner's commentary that he knew that C., unlike her opponents, was a minor. (*Id.* at 352.) Lastly, there was testimony Petitioner had sexual relations with other women under the age of 18, including Vivian Cleveland (*id.* at 650,) and Tomeka Cleveland, (*id.* at 298-300.) Petitioner admitted that he had sexual intercourse and fathered a child with Tomeka Cleveland when she was a "young girl", approximately 10–12 years old. (*Id.* at 1104.)

A review of the record shows evidence upon which a reasonable jury could have found that Petitioner did not have a reasonable or good-faith belief that C. was 18 years or older when he had sexual intercourse with her. Accordingly, the state court reasonably

rejected Petitioner's claim that there was insufficient evidence to support his conviction for unlawful sexual intercourse with a minor. Petitioner is not entitled to habeas relief on this claim.

## CONCLUSION

For the foregoing reasons, the petition for writ of habeas corpus is DENIED.

A certificate of appealability will not issue. *See* 28 U.S.C. § 2253(c). This is not a case in which "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

The Clerk shall enter judgment in favor of Respondent and close the file.

IT IS SO ORDERED.

DATED: JUL 26 2011

JEFFREY S. WHITE
United States District Judge

UNITED STATES DISTRICT COURT

FOR THE

NORTHERN DISTRICT OF CALIFORNIA

WALTER O COOPER SR,

Plaintiff,

v.

KATHLEEN DICKERSON et al,

Defendant.
_______________________________/

Case Number: CV09-02526 JSW

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on July 26, 2011, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Walter O. Cooper F26812
California Medical Facility
P.O. Box 2000
1600 California Drive
Vacaville, CA 95696-2000

Dated: July 26, 2011

Jennifer Ottolini

Richard W. Wieking, Clerk
By: Jennifer Ottolini, Deputy Clerk